MARY JONES, ET AL., *v.* B. M. JONES, ADM'R, ET AL.

**Wills—Construction—Advancements.**

> Where one advanced to his son certain property and the son afterwards conveyed said property to his father to hold in trust for said son's children, and at the death of said father by his will he appoints another as such trustee and directs said trustee that as the children of his said son became twenty-one years old or marry that their father and mother divide the property with them by the consent of the trustee and by the terms of said will, he further provided that "I will to my son, W. C. Jones, the tract of land on which he now lives, containing two hundred and eighty acres, more or less, and a negro girl by the name of Jane. * * * Now all the foregoing property of land and negroes and other property, etc., I leave to the legal heirs of William and Polly, for which I charge him two thousand dollars," it was held that the will gave to the heirs of W. S. Jones (his son) the property named in the clause of the will referred to, to the children of his son, W. C. Jones, and charged two thousand dollars as an advancement to said son which sum should be deducted from other property inherited from said father, which was not disposed of by the will.

APPEAL FROM MERCER CIRCUIT COURT.

September 24, 1877.

OPINION BY JUDGE ELLIOTT:

This appeal questions the correctness of the judgment of the court below in three consolidated suits, two of which were brought by the

appellants against the appellees and the other brought by all of the appellants except Mary Jones, against B. M. Jones, administrator of S. M. Jones, and Mary Jones, administratrix of W. C. Jones, and also in her individual capacity, and others.

The object of these several suits was to recover from the heirs and devisees of the estate of David Jones, appellants' equal share of the estate of David Jones, deceased, they being the widow and heirs at law of W. C. Jones, who was a son of said David Jones. The appellants also sought to recover damages from the administrators of S. M. and C. S. Jones who had been trustees of an estate of which appellants were the beneficiaries, and they further sought to recover judgment against Beriah M. Jones, administrator of S. M. Jones, for the mismanagement of the estate of W. C. Jones by S. M. Jones, who was the administrator thereof.

It appears from the evidence in this record that W. C. Jones was a dissipated, shiftless man, and his father having given him a farm and some slaves by way of advancement, he in 1839 executed a deed to his father, David Jones, by which he conveyed all his property then advanced to him back to his father in trust for the children he then had and should have by his wife, Mary Jones.

After giving his father the right to sell the trust property or swap it for the other property, he provides that "he (David Jones) is to and may permit said property to be so used for the benefit of his grandchildren, the cestui que trusts herein, in such manner as he deems best for their comfort." It will therefore be seen that the trustee was not bound to take actual possession of the trust property, but if he thought it was best for the children of W. C. Jones he had full authority to permit him to remain on the farm and cultivate it and raise and educate the children.

It appears that after the execution of this deed of trust W. C. Jones and his family remained in possession of the trust property and used it in the education and raising of his family, and the proof abundantly shows that the expenses of his family were equal to if not greater than the profits of the trust estate, and that the profits were used for their education, etc.; and there is no evidence conducing to show that either David Jones while he was trustee or his executors, who were made trustees of this estate by his will, ever used or converted any of the trust property, or its proceeds, to their own use, and the judgment dismissing that suit is affirmed.

In 1845 David Jones made his will by which he gave to his wife, Susannah, one-fourth of the farm on which he then resided, and he

says further: "I also give to my wife five horses of such as she may choose and as many of the cattle and hogs as she may want and as much of the household and kitchen furniture as she may want and a yellow woman by the name of Lucy and all her family and as much of the farming utensils as she may want and for her to have her choice of all the stock, and at her death to be sold or so divided so as to make all the children equal."

He states the advancements that he has made to his children, which he confirmed by his will, and made the following devise and bequest to his son, W. C. Jones, the father of appellants: "I will to my son, W. C. Jones, the tract of land on which he now lives, containing two hundred and eighty acres, more or less, and a negro girl by the name of Jane and her increase, except her second child Ann, and girl by the name of Betsy, without charge. I sold William two boys by the names of Henry and Preston not sound and died, and I let him have Ben in the stead of Preston and charging him two hundred dollars. Now all the foregoing property of land and negroes and other property, etc., I leave to the legal heirs of William and Polly, for which I charge him two thousand dollars.

"Also two hundred dollars paid for the building of his house. Now it is understood that I have taken a deed of trust of all Wm. C. Jones's property. At my decease I appoint Christopher L. Jones and Samuel M. Jones in my place, and it is my will that as the children of Wm. C. Jones and Polly, his wife, grow up and marry that William and Polly divide with them as they can spare by the consent of the said Christopher and Samuel, or either of them."

The foregoing are all the provisions of the will which relate to appellants or their father, and it is contended that by these provisions of his will David Jones gave the child's part of his estate which Wm. C. Jones would have inherited had no will been made, to the children of Wm. C. Jones and his wife, Mary.

At the sale of David Jones's estate made in 1855, shortly after his death, the father of appellants, W. C. Jones, bought about $1,300 worth of property, and at the sale of the personal estate of the widow of David Jones in 1858, shortly after her death, W. C. Jones bought some $1,400 worth of property; and in the settlement of the estate of David Jones, deceased, made after the death of W. C. Jones, appellants were charged with the debts incurred by him on his purchases of property at the sales of his father's and mother's estates made in 1855 and 1858. Appellants insist that as David Jones vested in them the title to their father's share of his estate, the pur-

chases of property at the sales of the grandfather and grandmother's estates by their father cannot legally be charged to them, as he was not their agent and had no authority from them to make the purchases.

According to our construction of the will it only gave to the legal heirs of W. C. Jones the property named in the clause of the will in which occurred the following statement: "Now all the foregoing property of land and negroes and other property, etc., I leave to the legal heirs of William and Polly, for which I charge him two thousand dollars, etc."

He gave the property named in the clause referred to to the appellants and charged their father with the amount of it.

It seems very certain from his will that the testator did not bequeath to appellants any of the property or its proceeds that he bequeathed to his wife for life, for he expressly says as to this property that "at her death to be sold or so divided so as to make all the children equal."

This bequest was made by the testator to make all his children equal, not to make the appellants, who were his grandchildren, equal with his children, and he requests his son, William, and Polly, the parents of the appellants, to divide their estate with them as the latter shall marry or attain twenty-one years of age.

The property of David Jones that was disposed of by the sale of his executors, made in 1855, had not been disposed of at all by his will, and of that property W. C. Jones was entitled to his distributive share; and he was also entitled to enough of the proceeds of the property devised to his mother for life, at her death, to make him equal with his father's other children after making him account for the property bequeathed to appellants and charged to him. As he was entitled to one child's part of the proceeds of the sales of the property belonging to the estate of his father, made in 1855 and 1858, it was proper for his father's executors to charge him in their settlement with the amount of his purchases at these sales, which they did, and there was then a balance coming to his estate of about nine hundred dollars, and this amount was paid over to S. M. Jones, his administrator.

It is insisted that Samuel M. Jones, as administrator of W. C. Jones's estate, received amongst other things six thousand dollars in cash belonging to it, and gave the same in to the appraisers, who returned the same as a part of their appraisement to the Mercer County Court, and the evidence conduces to prove that the item in

36

the appraisement bill of "Cash in the hands of the executor of David Jones, deceased, $6,000" is in the handwriting of Samuel M. Jones, his administrator. But the item of six thousand dollars was written with a pencil, and appellees contend was only intended for six hundred dollars; and we conclude that it must have been a mistake, for on a full settlement it turned out that there was only coming from the estate of David Jones to appellants as distributees of W. C. Jones, deceased, the sum of about nine hundred dollars.

The county court erred in failing to charge the executors of David Jones with interest on the claims coming to his estate from the time they fell due and drew interest, but as the sum which would be realized by correcting this error would be due to the administrator of S. M. Jones, the appellants are not prejudiced thereby, for it seems that on a settlement made by Samuel M. Jones, the administrator of W. C. Jones's estate, with the Mercer County Court, he had paid of debts against the estate about twelve hundred dollars more than the assets that came to his hands.

We are therefore of opinion from the evidence in these consolidated suits that the judgment of the lower court should be and the same is therefore *affirmed.*

*Thompson & Thompson, for appellants.*

*T. C. Bell, C. A. & P. W. Hardin, Kyle & Poston, for appellees.*